## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

———————————————————————— )
UNITED STATES OF AMERICA,                )
                                         )
            Plaintiff,                    )
                                         )
      v.                                  )        **Criminal Action No. 2011-004**
                                         )
                                         )
GILLIAN HARPER a/k/a "TIBA," and         )
KALIF FLANDERS a/k/a "SMOKE DOG,"        )
                                         )
            Defendants.                   )
———————————————————————— )

**Attorneys:**
**Alphonso G. Andrews, Esq.,**
St. Croix, U.S.V.I.
    *For the United States*

**Anthony R. Kiture, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant Gillian Harper*

**Emile A. Henderson III, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant Kalif Flanders*

## MEMORANDUM OPINION AND ORDER

**Finch, Senior District Judge**

THIS MATTER comes before the Court on two Motions: Defendant Gillian Harper's ("Harper") "Motion for Judgment of Acquittal And/Or New Trial" (Dkt. No. 125), and Defendant Kalif Flanders' ("Flanders") "Motion for Judgment of Acquittal Or, In the Alternative, For New Trial" (Dkt. No. 140). For the reasons that follow, the Court will deny the Motions.

# I.   BACKGROUND

On March 15. 2011, Harper and Flanders (collectively, "Defendants") were charged in a seven-count Indictment.   (Dkt. No. 1).   The Indictment charges that: Harper knowingly possessed a firearm while being a convicted felon (violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), 2 Count 1); that Flanders knowingly aided and abetted Harper in such illegal possession of a firearm (violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), 2 Count 2); Defendants mutually aided and abetted each other in possessing said firearm within a school zone (violation of 18 U.S.C. §§ 922(q)(1), 924(a)(4), Count 3); Defendants mutually aided and abetted each other in unauthorized possession of a firearm during the commission of crimes of violence (violation of 14 V.I.C. §§ 11, 2253(a), Count 4); Defendants mutually aided and abetted each other in murdering Luis Orlando Encarnacion (violation of 14 V.I.C. §§ 11, 2253(a), Count 5); Defendants mutually aided and abetted each other in committing assault in the third degree (violation of 14 V.I.C. §§ 11, 297(2), Count 6); and that Defendants mutually aided and abetted each other in using a firearm during a crime of violence for which federal prosecution was possible (violation of 18 U.S.C. §§ 924(c)(1)(A)(iii), 2, Count 7).   The felon in possession charges (Counts 1 and 2) were bifurcated to be tried at the conclusion of trial on the remaining Counts.

Trial on Counts 3-7 commenced on July 26, 2011 with *voir dire* and jury selection.   (Dkt. No. 98).   During *voir dire* the prospective jurors were asked a number of questions, including whether they, "anyone in [their] family, or a close relative [had been] a victim of a crime involving use of a weapon."   (Dkt. No. 127 at 34).   The jury panel member who was eventually seated as juror number 1 did not raise her card to indicate an affirmative response to this question. *Id.*   Prospective jurors were asked if they had heard of the incident in which Luis

2

Orlando Encarnacion was killed, but were not expressly asked if they knew the victim or any of his family members.  (Dkt. No. 127 at 6).  The panel member who was later chosen as the jury foreman did not raise his card in response to this question.  (Dkt. No. 127 at 6-8).  Twelve jurors and one alternate were chosen from the jury pool.

The evidence at trial established that on the morning of May 13, 2010, the victim left his home with Flanders. Multiple witnesses testified that they saw three men involved in an altercation in a field behind Evelyn Williams School in Mount Pleasant, St. Croix.  Witnesses heard a single gunshot. The victim's body was recovered from the same area where the altercation occurred.   A witness for the government testified that she saw both Defendants leaving her yard, which abuts the field where the victim's body was recovered, that they requested a ride home, and that she transported both Defendants to their homes in the Paradise Mills community.  The same witness testified that she saw a gun in Harper's pocket when he exited the car. Phone records introduced at trial documented multiple calls the morning of the murder between Defendants' cell phones. Witnesses also testified that Flanders and Harper each walked children from Paradise Mills to Evelyn Williams School on occasion.

At the close of the prosecution's case, both Defendants moved for immediate judgments of acquittal pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure. The Motions were both denied. The Rule 29 Motions were renewed after Defendants rested their case, and were again denied.  After nine days of trial and a morning of deliberation, the jury returned verdicts of guilty on Counts 3-7 for both Defendants.  (Dkt. Nos. 113, 114).  The Government dismissed Counts 1 and 2.  After the verdict was entered Defendants renewed their Rule 29 Motions for acquittal, or, in the alternative, new trials pursuant to Rule 33.  These Motions are presently before the Court.

## II.    DISCUSSION

Flanders contends that the Court should: (1) enter a judgment of acquittal pursuant to Rule 29 because the United States presented insufficient evidence to support his conviction on any of the charges; or (2) order a new trial pursuant to Rule 33 in the interest of justice, because the Court allegedly erred in admitting in evidence a cell phone recovered from the crime scene and because of alleged prejudice "caused to him by the prosecutor's request in front of the jury to re-open the government's case."  Harper contends that the Court should: (1) enter a judgment of acquittal pursuant to Rule 29 because the United States presented insufficient evidence to support his conviction on any of the charges; or (2) order a new trial pursuant to Rule 33 in the interest of justice, given newly discovered evidence of two jurors' allegedly concealed bias. The Court held a hearing on June 3, 2014 on Harper's Rule 33 argument, in which Flanders joined. The Court will first set forth the legal principles applicable to each Motion, before reaching their applicability to the facts of this case.

### A.    Legal Principles

Defendants each move for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure, or, in the alternative, a new trial pursuant to Rule 33 of the same. While each Defendant sets forth distinct grounds for their Motions, the legal principles applicable to the Motions are the same.

### 1.    Rule 29 Standard

A judgment of acquittal is appropriate under Rule 29 for insufficiency of the evidence the Court determines that no jury could rationally find proof of guilt beyond a reasonable doubt given the evidence presented in the case. *United States v. Bobb*, 471 F.3d 491, 494 (3d Cir. 2006).  In determining whether to grant a Rule 29 motion, the Court views the available evidence

in the light most favorable to the Government. *United States v. Smith*, 294 F.3d 473, 476 (3d Cir. 2002) (citing *United States v. Wolfe*, 245 F.3d 257, 262 (3d Cir. 2001)). An insufficiency of the evidence finding, and consequent acquittal, should be "'confined to cases where the prosecution's failure is clear'" – a heavy burden. *Smith*, 294 F.3d at 477 (quoting *United States v. Leon*, 739 F.2d 885, 891 (3d Cir. 1984)); *United States v. Casper*, 956 F.2d 416, 421 (3d Cir. 1992).

"Courts must be ever vigilant in the context of [Rule] 29 not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury." *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005) (citations omitted); *see also United States v. Soto*, 539 F.3d 191, 194 (3d Cir. 2008) (citation omitted). "Only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt," may the Court overturn the jury's verdict. *United States v. McNeill*, 887 F.2d 448, 450 (3d Cir. 1990) (citation omitted). "To sustain the jury's verdict, the evidence does not need to be inconsistent with every conclusion save that of guilty." *United States v. Gonzalez*, 918 F.2d 1129, 1132 (3d Cir. 1990) (citation omitted). "There is no requirement . . . that the inference drawn by the jury be the only inference possible or that the government's evidence foreclose every possible innocent explanation." *United States v. Iafelice*, 978 F.2d 92, 97 (3d Cir. 1992). The Defendants, in their Rule 29 motion, must therefore show that *no* evidence could support the jury rationally finding them guilty in this case. *McNeill*, 887 F.2d at 450.

## 2.    Rule 33 Standard

If Defendants are not granted judgments of acquittal, they seek a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. (Dkt. Nos. 138, 140). The Rule states that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. The rule may be applied where there is finding of prosecutorial misconduct, concealed juror bias, or evidentiary errors. *See United States v. Dixon*, 658 F.2d 181, 193 (3d Cir. 1981) (listing possible bases for granting a new trial). This list, however, is not exhaustive. If the Court concludes that a verdict constitutes a miscarriage of justice, it may set it aside and order a new trial. *United States v. Bevans*, 728 F. Supp. 340, 343 (E.D. Pa. 1990) *aff'd,* 914 F.2d 244 (3d Cir. 1990) (citing *United States v. Martorano,* 596 F.Supp. 621, 624 (E.D.Pa.1984), *aff'd,* 767 F.2d 63 (3d Cir.), *cert. denied,* 474 U.S. 949 (1985); *United States v. Phifer,* 400 F.Supp. 719, 723 (E.D.Pa.1975), *aff'd,* 532 F.2d 748 (3d Cir.1976)).

"When the court evaluates a Rule 33 motion, unlike an insufficiency of the evidence claim under Rule 29, it does not view the evidence in a light most favorable to the government, but 'instead exercises its own judgment in assessing the Government's case.'" *United States v. Dorival*, 2008 WL 1884166, *26 (D.V.I. Apr. 24, 2008) *aff'd in part sub nom.* (quoting *United States v. Johnson,* 302 F.3d 139, 150 (3d Cir.2002), cert. denied, 537 U.S. 1140 (2003)). The Court must grant a new trial pursuant to Rule 33 "if there is a reasonable probability that error infecting the prior proceedings could have had a substantial influence on the jury's decision." *Bevans*, 728 F. Supp. at 343 (citing *Government of Virgin Islands v. Bedford,* 671 F.2d 758, 762 (3d Cir.1982); *United States v. Mastro,* 570 F.Supp. 1388, 1390 (E.D.Pa.1983)). The Court also notes that the Constitution "entitle[s] Defendants to a fair trial but not a perfect one." *Lutwak v. United States,* 344 U.S. 604, 619 (1953), *reh'g denied,* 345 U.S. 919 (1953).

Where a prosecutor's statements are the basis for a Rule 33 motion, the Court inquires whether the alleged misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974). The misconduct must constitute a "'failure to observe that fundamental fairness essential to the very concept of justice.'" *Id.*, 416 U.S. at 642 (quoting *Lisenba v. California,* 314 U.S. 219, 236 (1941), *reh'g denied*, 315 U.S. 326 (1942)).  Improper remarks are to be viewed "in the context of the entire trial to determine whether they 'were sufficiently prejudicial' to the due process rights of any defendant." *Dorival*, 2008 WL 1884166 at * 27 (quoting *United States v. Scarfo,* 685 F.2d 842, 849 (3d Cir.1982), *cert. denied*, 459 U.S. 1170 (1983).

Where an evidentiary error is the alleged basis for a Rule 33 motion, the Court may grant a new trial "only if it believes that there is a serious danger that a miscarriage of justice has occurred-that is, that an innocent person has been convicted." *Johnson*, 302 F.3d at 150 (internal quotations and citations omitted). Such a miscarriage may have occurred where improperly admitted evidence likely changed the course and result of the trial, or when "evidentiary errors were so pervasive as to constitute 'a substantial influence on the outcome of trial.'" *United States v. Robinson*, 2014 WL 1329255, *4 (3d Cir. Apr. 4, 2014) (quoting *United States v. Thornton,* 1 F.3d 149, 156 (3d Cir.1993)).  In such instances, a new trial may be granted in the interest of justice.

If a juror's alleged concealed bias or partiality forms the basis of a Rule 33 motion, the movant must be given an opportunity to show actual bias.  *See Smith v. Phillips*, 455 U.S. 209, 215 (1982) ("This Court has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias."). If, after that hearing, a court determines that the impact of a juror's actual bias or misconduct was prejudicial to the

7

defendant, then a new trial may be ordered.  *See Id.* (citing *Remmer v. United States*, 347 U.S. 227 (1954)).  To obtain a new trial based on a juror's mistaken response to a *voir dire* question, the Defendants must show that 1) the "juror failed to answer honestly a material question on *voir dire,* and then further [2]) that a correct response would have provided a valid basis for a challenge for cause." *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984). In sum, for a defendant to obtain a new trial on a juror misconduct or concealed bias claim he must show actual bias on the juror's behalf, and to obtain a new trial based on a juror's false response in *voir dire* he must show that a truthful answer would have supported the Court's striking the juror for cause. Absent these showings, a new trial is not in the interest of justice as required by Rule 33.  *Id.*; Fed. R. Crim. P. 33.

### B.    Analysis

The Court next applies the legal principles set forth above to the case at hand, and finds that Defendants' Motions must be denied.

### 1.    Defendant Harper's Rule 29 Motion

On a defendant's Rule 29 Motion, the Court looks at the evidence in the light most favorable to the Government, and "sustain[s] the verdict 'if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Mike*, 655 F.3d 167, 174 (3d Cir. 2011) (quoting *United States v. Dent,* 149 F.3d 180, 187 (3d Cir.1998)).  Here, Harper's Rule 29 Motion argues that there was insufficient evidence to convict him of any of the Counts in the indictment on which the jury found him guilty.  The Court looks at the evidence supporting each Count in turn, to determine whether there was a sufficient basis for a rational fact finder to convict Harper. *See United States v. Voigt,* 89 F.3d 1050, 1080 (3d

Cir.1996) (court does not weigh evidence or judge witness credibility, but rather determines whether sufficient evidence exists to support the jury's verdict on motion for acquittal).

Count 3 of the indictment charges Harper with possession of a firearm within a school zone, in violation of 18 U.S.C. §§ 922(q)(1), 924(a)(4).  The Government had to show that on May 13, 2010, Harper was in possession of a firearm, within a school zone, and that he knew he was in a school zone. Government witness Sharon Tittle's testimony placed Harper at the scene; more specifically, she identified Harper in open court as one of the men to whom she gave a ride on the morning of the homicide.  (Dkt. No. 129 at 112-13).  She also testified that she saw a firearm in Harper's back pocket when he exited her car.  (Dkt. No. 129 at 117).  The witness' home, where she saw Harper, abuts the Evelyn Williams School. (Dkt. No. 129).  Other Government witnesses testified that the school was less than 1000 feet from where the victim's body was recovered, that people at the school witnessed the altercation the morning of May 13, 2010, and that Harper had walked his child to Evelyn Williams School on multiple occasions.  A rational jury could conclude from this evidence that the Government carried its burden on all elements of Count 3.

Harper argues that the evidence is insufficient because other witnesses did not positively identify Harper, and because Tittle's testimony was inconsistent with a statement given to police by her nephew.  (Dkt. No. 139 at 6-7).  The Court, on Defendant's Rule 29 Motion, does not weigh evidence or choose which witnesses to believe or disbelieve.  *See Voigt,* 89 F.3d at 1080. Accordingly, both arguments are unavailing.

Count 4 charges Harper with unauthorized possession of a firearm in violation of 14 V.I.C. §§ 11, 2253(a).  Count 7 charges Harper with using a firearm during a crime of violence for which federal prosecution was possible, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii), 2.  The

charges required the Government to prove beyond a reasonable doubt that Harper possessed a firearm while unauthorized to do so, and while committing a crime of violence.[1] Witnesses testified that Harper did not have a license to carry a firearm, and that a firearm was in his pocket the morning of the murder.  From this testimony, in addition to evidence supporting the charges in Counts 5 and 6, *infra*, a jury could rationally find the elements of Count 4 and Count 7 satisfied.   Any contradictions in the testimony—which Harper argues render the evidence insufficient on both Counts—are not for the Court to weigh on a Rule 29 Motion and do not render the evidence insufficient. *See Brodie*, 403 F.3d at 133 (the court is not to substitute its judgment of the evidence for the jury's on a Rule 29 motion for acquittal).

Count 5 charges Harper with murder in the first degree, in violation of 14 V.I.C. §§ 11, 2253(a). The Government offered evidence at trial that: the victim was with Flanders the morning of May 13, 2010; Flanders and Harper communicated by phone around the time the victim left his home with Flanders; three men were involved in the altercation behind Evelyn Williams School; the victim was killed by a gunshot to the head during the altercation, and his body was subsequently found under some bushes in a field behind the school; Harper was in the area—with Flanders—where the altercation occurred around the time it occurred; that Harper was carrying a firearm on his person that morning.  (Dkt. Nos. 139, 140).   This Court finds this evidence, in addition to other evidence offered at trial, is a sufficient basis for a rational jury to convict Harper on Count 5.

Harper argues in his Motion that because the Government did not offer eyewitness testimony identifying him as one of the men seen attacking the victim, the evidence is

---

[1] The crime of violence charges are addressed in Counts 5 and 6, *infra*.  As the Court finds there were sufficient bases for the jury to find Harper guilty on Counts 5 and 6, the crimes of violence, the Court does not address that element of Counts 4 and 7 here.

insufficient to convict him of Count 5.  He also argues that the evidence is insufficient because the Government did not offer DNA evidence linking him to the crime, and there was no evidence that Harper was in contact with the victim the morning of the altercation.  (Dkt. No. 139 at 9-10).  The Government is not required to offer either DNA or eyewitness testimony in order to prove its case; circumstantial evidence is not insufficient merely because it is circumstantial.  *See United States v. Russell*, 971 F.2d 1098, 1111 (4th Cir. 1992); *Gov't of Virgin Islands v. Harris*, 938 F.2d 401, 408-09 (3d Cir. 1991).  The Court will not acquit Harper because there was no DNA evidence supporting his conviction.  The Court also will not acquit simply because the witnesses who saw the altercation from afar could not identify the perpetrators.  Accordingly, the jury's verdict on Count 5 will not be disturbed.

Count 6 charges Defendants with commission of assault in the third degree, in violation of 14 V.I.C. §§ 11, 297(2).  The evidence offered at trial placed Harper, with a firearm, in the vicinity of the altercation in which the victim was assaulted prior to being shot.  It also placed Harper with Flanders, who was with the victim the morning of the assault and murder. For the same reasons as those set forth above regarding Count 5, a rational jury could find Harper guilty of the offense charged in Count 6, despite the fact that no eyewitnesses positively identified Harper as an attacker in the altercation.

The Court, having viewed the evidence in the light most favorable to the Government and having reviewed the evidence that could support the Government's case against Harper, finds that a jury could rationally find Harper guilty of Counts 3-7 of the indictment.  Accordingly, the Court does not find it insufficient, and will not enter a judgment of acquittal in place of the jury's verdict of guilty as to Harper on all five Counts.

11

### 2.       Defendant Flanders' Rule 29 Motion

Flanders also moves for a judgment of acquittal on Counts 3-7 of the indictment, arguing that the evidence is insufficient to convict him on each of the Counts.  Each Count of the indictment charges the Defendants with commission of the charged crime while mutually aiding and abetting each other.  The Virgin Islands Code states that "whoever commits a crime or offense or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal. [and] [w]hoever willfully causes an act to be done which if directly performed by him or another person would be a crime or offense, is punishable as a principal." 14 V.I.C. §§ 11(a),(b).  If a jury could rationally find that Flanders aided, abetted, counseled or induced Harper in the commission of any of the charged crimes, it thus could rationally convict Flanders of the offense as a principal.  If the jury could rationally base its verdict either on evidence supporting the theory of Flanders as principal actor, *or* evidence supporting an aiding and abetting theory, the conviction will not be vacated by the Court.

Flanders asserts that no jury could rationally convict him, based on the evidence at trial, of aiding and abetting in the possession of a firearm within a school zone in violation of 18 U.S.C. §§ 922(q)(1), 924(a)(4) (Count 3); unauthorized possession of a firearm in violation of 14 V.I.C. §§ 11, 2253(a) (Count 4); murder in the first degree, in violation of 14 V.I.C. §§ 11, 2253(a) (Count 5); commission of assault in the third degree, in violation of 14 V.I.C. §§ 11, 297(2) (Count 6); and with using a firearm during a crime of violence for which federal prosecution was possible, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii), 2 (Count 7).  For the reasons discussed above, a jury could rationally convict Harper of these offenses. If evidence in

12

the record could support a theory that Flanders aided, abetted or counseled Harper, then Flanders' is not entitled to a judgment of acquittal on Counts 3-7.

The Government presented evidence at trial that Flanders was on the phone with Harper while at the victim's home the morning of May 13, 2010, and that the victim left his home soon thereafter with Flanders and did not return. Evidence demonstrated that three men—including the victim—were involved in an altercation behind Evelyn Williams School.  Witnesses testified that they heard a gunshot around the same time the altercation occurred.  The victim was found near the site of the altercation with a single gunshot wound, from which a jury could rationally infer that the one of other men involved in the altercation shot the victim. Flanders and Harper were seen together in the vicinity of the school immediately after the altercation, specifically in the yard belonging to a witness—a yard which abuts the field where the altercation occurred. A witness testified that Flanders said "let we go" to Harper before they jointly entered the witness' vehicle.  Harper and Flanders asked the victim to drive them to the same place—the housing community where they both lived. When they exited the car, the witness saw a firearm in Harper's rear pocket.

The evidence, when viewed in the light most favorable to the Government, could allow a jury to infer that Flanders and Harper acted in concert.  Their speaking by phone before the victim left his home, their being seen together in the vicinity of the altercation around the time of the altercation, and their moving together in asking Ms. Tittle for a ride home together supports this inference.  While there was no evidence that Flanders handled a firearm, his actually brandishing a weapon is not a required element of the firearm-related offenses charged. *See United States v. Price*, 76 F.3d 526, 529 (3d Cir. 1996) (aiding and abetting theory can be applied to firearm offenses where accused did not use the weapon).  Because there was evidence

13

presented that Harper was armed, and further evidence that Harper was communicating with Flanders before and after the altercation, a jury could conclude that Flanders facilitated, abetted and/or encouraged carrying and usage of the firearm and related charges. The evidence presented at trial could thus support the theory that Flanders and Harper acted in concert, and that Flanders counseled and/or abetted Harper in the commission of the offenses charged.   Accordingly, Flanders' Motion pursuant to Rule 29 will be denied.

### 3.        Defendant Harper's Rule 33 Motion

Harper has also moved for a new trial pursuant to Rule 33 if his Motion for acquittal fails. Under Rule 33, the Court may grant such relief if "the interest of justice so requires." Fed. R. Crim. P. 33; *Bevans*, 728 F. Supp. at 343.   Where a defendant alleges that a juror's concealed bias influenced the proceedings, then that defendant must be afforded an opportunity to demonstrate the juror's partiality. *Phillips*, 455 U.S. at 215.   The Court afforded Harper (and Flanders) this opportunity in the hearing on June 3, 2014.

If, after that hearing, the Court determines that the impact of a juror's actual bias or misconduct was prejudicial to the defendant, then a new trial may be ordered.  To show that a new trial is in the interest of justice on the basis of jurors' concealed bias, Harper must show that the jurors at issue failed to answer honestly a material question on *voir dire,* and then further that a correct response would have provided a basis for dismissing the juror for cause.  *McDonough Power Equip., Inc.*, 464 U.S. at 556.   Harper challenges the conduct of two jurors; the Court takes each in turn.

Harper first asserts that the jury foreman, Reginald Donovan, was biased against the Defendants because he knew the victim's grandfather and concealed this fact on *voir dire*.  The jury panel was not asked whether members knew the victim's family; it was asked, rather,

whether members had heard of the incident in which Luis Orlando Encarnacion was killed. (Dkt. No. 127 at 8).   Mr. Donovan did not respond in the affirmative.  *Id.*  Jurors were not asked whether they knew the victim's relatives, other than his mother and sister who were listed as witnesses.  *Id.* at 46. Attorneys for both Defendants and the Government were asked by the presiding judge whether they had additional questions for the panel after the agreed-upon *voir dire* was complete. *Id.* at 45.  No attorney suggested that the panel be questioned about their connections to victim's extended family.  *Id.* at 47.

Harper, in his Motion, asserts that Mr. Donovan did not alert the Court to the fact that Mr. Donovan knew the victim's grandfather at *voir dire*. At the hearing on June 3, 2014, Mr. Donovan testified that he knew the victim's grandfather and great uncle, and also knew—by sight but not personally—the victim's other great uncle. He also testified that he hadn't spoken with either the victim's grandfather or his great uncle in many years and did not consider either one to be a friend, in particular because they did not speak the same language and thus could not communicate. The testimony regarding when Mr. Donovan learned that the victim was related to Mr. Donovan's acquaintances is confusing. At the June hearing he testified that he learned after the trial "on the street" that the victim was related to his former coworker, though in a hearing before the magistrate in September 2013 he testified that he had heard another juror mention the older Encarnacion brothers' names.  (Dkt. No.  169). Regardless of whether or when Mr. Donovan learned of any relationship between the victim and Mr. Donovan's acquaintances, he did not indicate at *voir dire* that he had heard of the incident prior to trial, or that he knew the victim or any of his family members.

As repeatedly noted above, in order to obtain a new trial based on a juror's concealed bias and consequent impartiality, a defendant must show—as a threshold matter—that the juror

15

dishonestly answered a material question on *voir dire*. *McDonough Power Equip., Inc.*, 464 U.S. at 556. "*McDonough* plainly requires an affirmative dishonest statement on *voir dire*" and defendants bear the burden of showing such dishonesty as a part of their allegation of bias. U.S. v. Holck  398 F.Supp.2d 338, 361 (E.D.Pa.,2005).  Here, despite Harper's assertion—without citation to any authority—that "there is a presumption of implied bias premised on Reginald Donovan not informing the Court that he knew the victim's grandfather," there is simply no evidence of any concealment or dishonesty.  (Dkt. No. 139 at 13).

The Defendants have offered no evidence that Mr. Donovan dishonestly answered the questions posed at *voir dire*. They did not establish that he actually *had* heard of the murder, nor did they establish that he actually knew or concealed knowledgw of the witnesses in the case about whom he was asked.  Defendants did not ask the Court to question the jury panel regarding prospective jurors' connections to the victim's family, and Defendants have not shown that Mr. Donovan was aware that he was acquainted with the victim's grandfather. Accordingly, there is nothing in the record showing that Mr. Donovan answered any question dishonestly, and thus there can be no concealed bias claim under *McDonough*.  Accordingly, no new trial will be granted on this basis.

Harper next asserts that a new trial is necessary because another juror, Shenique Lake, concealed her bias against defendants.  He argues that Ms. Lake concealed the fact that three of her family members were victims of gun crimes, and that the bias presumed as a result of this concealment necessitates a new trial. (Dkt. No. 139 at 15-16).  Harper is required, under *McDonough*, to show that Ms. Lake dishonestly answered a material question during *voir dire,* and that there would have been a basis for dismissing her for cause had she answered honestly. *McDonough Power Equip., Inc.*, 464 U.S. at 556.  A prospective juror should be removed for

16

cause when the juror's bias (or risk thereof) would impair a defendant's constitutionally-protected right to an impartial jury. *See United States v. Martinez-Salazar*, 528 U.S. 304, 314 (2000); *see also United States v. Polichemi*, 219 F.3d 698, 703 (7th Cir. 2000).

During *voir dire*, all prospective jurors were asked if "anyone in your family, or a close relative, may have been a victim of a crime involving the use of a weapon?" (Dkt. No. 127 at 34). Ms. Lake did not raise her juror card. At the hearing on June 3, 2014, Ms. Lake testified that she did not recall hearing the aforementioned question. She also testified that she had an uncle who she "think[s] was murdered" in 2002. (Dkt. No. 169) In the hearing before the magistrate in September 2013, Ms. Lake had testified that her uncle was killed when she was in 7th or 8th grade, and "she only knew him from what [she'd] heard about, because most of the time he was in jail, so [she] didn't know him like that." (Dkt. No. 170, Ex. 1). Ms. Lake was also questioned about two other cousins who were murdered. *Id.* She testified that she did not remember what happened to them and that she was not close to them, and thus "doesn't keep information about them in [her] mind." (Dkt. No. 169). Ms. Lake testified that had she heard the aforementioned question, her juror card "should have been raised" because the three were technically family members, though she was not close to them *Id.*

The Court first addresses whether Ms. Lake dishonestly answered the question posed, as required by *McDonough*. Ms. Lake testified that she did not recall the question being asked. Additionally—if Ms. Lake had heard the question—it is unclear whether she should have raised her card because the language is ambiguous as to whether more distant family members were to be included, given that the question specified "close relatives" separately from "your family." (Dkt. No. 127 at 34). Ms. Lake's testimony unambiguously shows that she did not consider her deceased relatives to be close. The Supreme Court held, in *McDonough*, that while "the motives

17

for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial." *McDonough,* 464 U.S. at 556.  For an inaccurate answer during *voir dire* to constitute dishonesty, other Circuits have expressly held that defendants must prove the omission or concealment was motivated by partiality in order to obtain a new trial.  *See United States v. Tucker*, 137 F.3d 1016, 1028 (8th Cir. 1998) (must prove deception occurred "because of partiality, rather than for some reason that is irrelevant to the fairness of the trial"); *United States v. Boney,* 977 F.2d 624, 634-35 (D.C.Cir.1992) (same); *Fields v. Brown*, 503 F.3d 755, 767 (9th Cir. 2007).  Because Ms. Lake did not recall hearing the question, and because the family members at issue may have fallen outside the ambit of the question, and because there is absolutely no showing or evidence that Ms. Lake's answer was motivated by partiality, the Court does not find that she answered dishonestly.

Even if the Court were to conclude Ms. Lake answered dishonestly, however, in order to obtain a new trial on concealed or implied bias grounds, Harper would have to show that had Ms. Lake answered correctly she should have been stricken for cause. *See Tucker*, 137 F.3d at 1028. Harper asserts that because Ms. Lake's relatives were victims of gun crime, she was presumptively biased. (Dkt. No. 139 at 15-16).  Presumptive or implied bias is a basis for a juror's being stricken for cause.  *Tucker*, 137 F.3d at 1028.

Implied bias is a well-established concept. *Polichemi*, 219 F.3d at 704. "Because implied bias deals in categories prescribed by law, the question whether a juror's bias may be implied is a legal question, not a matter of discretion for the trial court. . . . Courts look to the facts underlying the alleged bias to determine if they would create in a juror an inherent risk of substantial emotional involvement." *United States v. Mitchell*, 690 F.3d 137, 142-43 (3d Cir. 2012) (internal citations omitted).  The categories of presumptive bias under the law are:  kinship

18

to a party, even if remote; any financial interest in the case; former jury service in the same cause, or because the prospective juror was connected to the same society or corporation as a party in the case. *Polichemi,* 219 F.3d at 704 (citing *United States v. Annigoni*, 96 F.3d 1132, 1138 (9th Cir.1996); *Getter v. Wal–Mart Stores*, 66 F.3d 1119, 1122 (10th Cir.1995); *United States v. Haynes*, 398 F.2d 980, 984 (2d Cir.1968)); *Tucker*, 137 F.3d at 1029 (internal citations omitted). None of the categories of legally-mandated implied bias are implicated in this case.

The Third Circuit has held that "implied bias is a limited doctrine, one reserved for exceptional circumstances." *Mitchell*, 690 F.3d at 147. The Court finds no such circumstances are present here. The Court finds no "inherent risk of substantial emotional involvement" in the case where—as here—the juror testified that she had virtually no relationship with her murdered relatives, one murder occurred when she was a child, in one case did not know the deceased was a relative until her aunt informed her after the fact, and she was not close with any of the deceased relatives and thus did not "keep them in her mind." (Dkt. No. 169). The Third Circuit distinguishes between close and distant relatives, finding the latter relationship "sufficiently attenuated so as not to undermine the appearance of fairness in judicial proceedings." *Mitchell*, 690 F.3d at 147 (adopting the close relative standard for juror exclusion where juror is related to a *party* in the case). Further, Defendants made no showing of actual bias or partiality in the post-verdict hearing. *Smith,* 455 U.S. at 215 (if no presumptive bias, defendants entitled to opportunity to prove actual bias as basis for new trial). The Court has no basis in the record on which to find Ms. Lake harbored hidden bias or substantial emotional involvement in the case. Accordingly, even if her omission at *voir dire* was dishonest, the Court does not find that a new trial is in the interest of justice and Harper's Rule 33 Motion will be denied.

19

### 4.        Defendant Flanders' Rule 33 Motion

Defendant Flanders makes two additional arguments in support of his Motion for a new

trial pursuant to Rule 33.  (Dkt. No. 140).  He first asserts that a cell phone recovered from the

crime scene was admitted in error,[2] and that such error constituted a miscarriage of justice such

that a new trial is warranted.  (Dkt. No. 140 at 17-18).    When such an allegation is the basis for

a defendant's seeking a new trial, the Court grants a new trial only if it determines that the error

caused a "serious danger  . . . that an innocent person [was] convicted."  *Johnson*, 302 F.3d at

150 (internal quotations and citations omitted).  Second, Flanders asserts that the Government's

conduct in requesting to reopen its case in the presence of the jury "affected the fundamental

fairness of the trial" and thus the "usual remedy granted to overcome [such conduct] is a new

trial." (Dkt. No. 140 at 20).  To determine whether to grant a new trial pursuant to Rule 33, the

Court looks to whether the Government's conduct plagued the trial with unfairness resulting in a

denial of the process due a criminal defendant.  *DeChristoforo,* 416 U.S. at 643.   The comments

or conduct must offend "the very concept of justice" and "fundamental fairness" that the

Constitution seeks to protect. *Lisenba,* 314 U.S. at 236.  A prosecutor's statements—even if

improper—do not warrant a new trial absent this determination.

In the instant case, Flanders contends that because the police mishandled a cellular

phone, it should not have been admitted in evidence and that such error constitutes a miscarriage

of justice.  Specifically, the testimony at trial established that Virgin Islands Police Department

---

[2] Flanders contends that the phone was erroneously admitted for two reasons. First, that the chain of
custody was broken and the integrity of the evidence thus compromised.  Second, he contends that the
probative value of the phone was outweighed by its prejudicial effect, and thus under Federal Rule of
Evidence 403, the Court should not have admitted the phone into evidence.

Detective Herbert did not properly sign out the phone from the evidence room and he held it in his office for a number of weeks before it was sent for DNA testing, and that he improperly oversaw Flanders' touching the phone while it was in police custody.  Flanders also contends that the cell phone's prejudicial effect was magnified because Flanders' DNA was found on the phone, and that such prejudice outweighed the probative value of the phone and thus admitting the phone caused a miscarriage of justice.

Evidence must be in "substantially the same condition as when the crime was committed before it can be admitted."  *United States v. Clark*, 425 F.2d 827, 833 (3d. Cir. 1970).  Here, there is simply no evidence in the record that the phone was in changed condition from when it was recovered from the crime scene, thus the Court did not have a basis for excluding the phone on tampering or alteration grounds. Defendant Flanders' touching the phone, as he did in this case, does not constitute tampering or changing its character, in particular where he verbally asserted he owned the phone prior to physically picking it up.  (Dkt. No. 132 at 80).

Flanders next asserts that the chain of custody was broken, and thus the evidence was improperly admitted.  (Dkt. No. 140 at 16).   Absent some evidence of tampering, chain of custody-based challenges go to the weight of the evidence rather than its admissibility.  *United States v. Lewis*, 363 F. App'x 382, 389-90 (6th Cir. 2010).  Here, the jury was aware of any mishandling of the phone, and as such was equipped to judge the evidence's weight and it was not improperly admitted on chain of custody grounds.  (Dkt. No. 132 at 75-85).

Finally, Flanders asserts that because there was no direct evidence placing him in the location where police recovered the phone—the crime scene—the evidence is unduly prejudicial. (Dkt. No. 140 at 18).  The Court finds this argument rather circular, and finds evidence of Flanders' possessions at the scene of the crime to be highly probative. Further, the Court sees no

21

prejudicial effect separate from this probative value, and Flanders does not assert any such effect. (Dkt. No. 140 at 18).  The Court therefore does not find the evidence was improperly admitted, and will accordingly not grant a new trial on this basis.

After the close of the Government's case, the Defendants moved for judgments of acquittal outside the presence of the jury. Those motions were denied. The Court then asked counsel if they had any further issues or motions for the Court. Neither Defendants nor the Government responded in the affirmative.  After the jury was reseated, the Government moved to reopen its case to offer additional evidence to substantiate the testimony of a previously-excused witness.  The Motion was denied and the case was not reopened.  Defendant Flanders moved for sanctions. The Motion for sanctions was also denied.  (Dkt. No. 133 at 124-27).

Flanders contends that the Government's statement in asking to reopen the case in the presence of the jury was improper and prejudicial and thus merits a new trial.[3]  (Dkt. No. 140 at 19-20).  The statement—it if was improper—should serve as the basis for a new trial only if the Court determines that the statement or misconduct prejudiced the defendant and likely changed the outcome of the trial. *United States v. Warfield*, 97 F.3d 1014, 1028 (8th Cir. 1996) (citing *United States v. Karam,* 37 F.3d 1280, 1289 (8th Cir.1994)).  Here, the Government's oral motion seeking to reopen the case stated only that the Government found a document related to Detective Herbert's testimony.  The request did not state the contents of the document, what the Government sought to prove by introducing it, or what effect, if any, the document would have on the government's case.  The prosecutor made no representation as to whether the document

---

[3] The Government contends its request to reopen the trial was not improper. Because the Court finds that it was not prejudicial, it need not reach the question of whether it was improper.  *See United States v. Warfield,* 97 F.3d 1014, 1028 (8th Cir. 1996) (court must resolve whether comments were improper and whether they prejudiced Defendant's right to a fair trial; affirmative answers to both questions required for a new trial pursuant to Rule 33).

supported or contradicted previous testimony.  Accordingly, the jury received no information from the Government's statement other than the fact that a document existed.  On this record, the Court cannot find that there is a "reasonable probability" that the outcome would have been different but for the statement. *United States v. Hall*, 47 F.3d 1091, 1098 (11th Cir. 1995).  The Court finds that the request, which revealing nothing about the contents or purpose of the document, is an insufficient basis for a finding of prejudice. As such, the Court will deny Flanders' Rule 33 Motion on these grounds as well.

### III.    CONCLUSION

For the reasons discussed above, the Court finds that neither Defendant is entitled to a judgment of acquittal, nor is either Defendant is entitled to a new trial in the interest of justice. The Court will thus deny both Defendant Harper's Motion for Judgment of Acquittal and/or New Trial (Dkt. No. 138) and Defendant Flanders' Motion for Judgment of Acquittal or in the Alternative New Trial (Dkt. No. 140).  Accordingly, it is hereby

**ORDERED** that Defendant Harper's Motion for Judgment of Acquittal and/or New Trial is **DENIED**.; and it is further

**ORDERED** that Defendant Flanders' Motion for Judgment of Acquittal or in the Alternative New Trial is **DENIED**; and it is further

**ORDERED** that this case will be scheduled for sentencing at a time that is convenient to the parties and Senior District Judge Raymond L. Finch.

**SO ORDERED.**

Date: July 25, 2014                                    _____/s/_____
                                                                    Raymond L. Finch
                                                                    Senior District Judge